Good morning. May it please the court. My name is Daniel Hoy. I'm Pro Bono counsel for Appellant Randy Cordero. This case stems from a trial court judgment that was entered in 2015 following a four-day jury trial. That issue are the jury instruction and special verdict form dealing with Mr. Cordero's claims relating to the four-day jury trial. The jury found that Mr. Cordero's claims relating to the 14th amendment and due process claims where he contends that officer, I want to say the name right, Vasejo, used improper force as well as verbal abuse aimed at Mr. Cordero. Here's my issue and I'm just speaking for myself. The jury found that the force was not excessive so they believed the officer's version of events. And ordinarily the motivation of an officer for an otherwise lawful event isn't relevant. So if there was reasonable and not excessive force used, how is there a freestanding claim that the person was motivated to use the reasonable force by racial bias? Well, I think first of all, there are two different claims. One brought under the fourth amendment under search and seizure and one brought under the 14th amendment. The excessive force under the 14th amendment, there wasn't any real dispute over the jury instructions or the verdict. But where the issue comes in is Mr. Cordero withstood a motion to dismiss, he withstood a motion for summary judgment, all aimed at this 14th amendment claim which directed at racial animus that Mr. Vasejo. But I guess what I'm saying is if there's racial animus but no unlawful event occurs as a result of it, I don't understand how that's a claim or how there's prejudice to your client in a legal sense as distinct from the prejudicial feelings of an individual. The instruction that was requested by Mr. Cordero's trial counsel would have allowed the jurors to consider the racial animus of the officer. But why is that? I guess what I'm getting at is why is that proper once they have found that there was no unlawful act? If the arrest was proper, the detention was proper, the amount of force used was reasonable, nothing happened to your client that shouldn't have happened to your client. And so the feelings of the officer who did these lawful things, I don't understand how that matters. Well, you have a citizen who's being pushed and shoved and The jury didn't believe that. That's my problem with it. They didn't believe that there was excessive force under the So is your claim that the officer tightened the cuffs too tight on him and wouldn't have done that if he'd been of a different race? This individual officer is the one that escorted Mr. Cordero from his apartment the morning of the arrest. Okay. But what did he do? Did he speak unkindly to him in ways he wouldn't have spoken to a different suspect? The officer is Samoan. Right. I'm just trying to figure out. I understand. So I understand that the judge ended up sort of tying your equal protection claim to the Fourth Amendment claim. And as Judge Graber has probed with you, you don't have an excessive force claim. You're really not here claiming that you do. What you're claiming is that he used discriminatory force. That is that he used something different with your client than he would have with some other defendant. Now, what you requested was a pretty free-sweeping instruction. I mean, it doesn't seem to have been bounded or tied to anything. You just asked him whether he discriminated against him on the basis of race. That was your proposed instruction. Correct. It's not the one that the judge gave you. But it's not tied to anything. So what was the jury supposed to find, and what evidence did you have? Did you have any comparative studies showing how this officer treated other people? It was strictly just an individual claim. Right. But in order to say that you treated me differently from somebody you treated here, you have to be able to show you treated A different than you treated B. You've got to have a B. I don't see that you've got one. It looks like it's just you didn't treat me. You see, a Fourth Amendment claim is a freestanding complaint. It doesn't require any points of comparison. There is either excessive force or there's not excessive force. And we don't have to compare with it the way anybody else was treated by the officer. But the claim that you brought is strictly a comparative claim. It has to be compared to something. What evidence did you present that he treated him differently from the way he treated somebody else and that it should have gone to the jury on the question as to whether the motivation was race? Well, there was no statistical information. There is no evidence of that. There were other people who were arrested with him, right? No. Weren't there other people who were picked up at the same time? No. It was just Mr. Cordero. Okay. I may have confused it with the names of the other officers who were present. Let me follow up real quick on that. Were there other arrests by this officer that allegedly were racially prejudiced? Was there an expert that said that this particular maneuver shouldn't have been used in this case in his evidence? Did he violate department policy? Well, no.  But what the evidence is is that these two gentlemen both have Pacific Islander backgrounds, and that was raised by Mr. Cordero the morning of the arrest, and that the officer took offense, and the officer then proceeded to the testimony from Cordero was that he battered him. He bounced his head against him. But, see, the jury obviously did not believe that or they would have found excessive force. There really are only two options here because what was described by your client to the jury would have clearly been excessive force. What was described by the officers clearly was not, and the jury chose not. So the only discriminatory thing that he testified to, and we can assume perhaps that the jury believed this, was that he said something unkind, basically. But I don't understand where that gets him. The issue is, for us, is that under the 14th Amendment, we weren't even allowed to have the jury entertain race, even though there was evidence put on about what the officer said about the allegations regarding their Pacific Island status. And here's where I'm having difficulty. I mean, I wonder whether the district court didn't cut you some slack because perhaps you should have had a directed verdict because you don't have anything in comparison. I mean, how can we do that? The bare fact that the officer said, I'm Samoan, you're not an islander, you're a disgrace. Exactly. This kind of indignity rises to the level of a 14th Amendment claim that is compensable under Section 1983? Well, and here, we combine it with the force. But what we're saying is that it goes to the judge. But you can't combine it with the force because the jury said there wasn't any. But we're talking about excessive force. We're arguing that there should be something less than excessive force when it's combined with the racial animus that was displayed by the officer. Right. But how can we, again, if you don't have a point of comparison, how could the jury could have possibly made that judgment? But the jurors may have made a different judgment had they been able to consider what was motivating this officer. Why was he doing what he did? Well, they heard the evidence of race. The statement came into evidence. It came into evidence. Right. So they knew that when they made their decision. They were instructed on excessive force. And if they didn't find excessive force, then they couldn't consider race. That was the gist of it. I'm sorry. Just one last question because I think you're going to need to reserve some time. Do you have any cases? What's your best case? The best case is the Ninth Circuit Barron v. Harrington. And it's talking about violations of equal protection clause requiring showing that the officer acted with an intent or purpose to discriminate what we wanted to. And was that a freestanding case? That was my understanding, Your Honor. I don't remember that one. Okay. Is that cited in your brief? Yes, Your Honor. Okay. Thank you. We'll give you a little bit of extra time when the time comes. Thank you, Your Honor. We asked a lot of questions. Good morning. May it please the Court, my name is Nathan Oyster. On behalf of the defendants and appellees, Veoso, Flores, and Caballero, the three officers who were sued, I won't belabor the points that were raised in our brief that the Court has addressed with the questions. A couple of points I would like to address are there were a few additional issues that were raised in an informal brief by the plaintiff when he was representing himself. Those haven't been addressed, in addition, by the argument from plaintiff's counsel here. To go back to this question of the jury instruction, I still have yet to hear what is the specific act that Officer Veoso allegedly did that would form the basis for the equal protection claim. I've heard the allegation of statements that he made, but what's the specific act? If Veoso had been the officer who had cuffed him, and Mr. Cordero, who conceded that he had been previously handcuffed many, many times, said, I've never been handcuffed in this way, it was way too tight, I told the officer it was too tight, and he just laughed and said he didn't care. And then we have the other statements about being Samoan and being a disgrace to the islanders and so forth. Would he have a claim? Independent of excessive force. Even if he said, even if it fell short of excessive force, I've never been cuffed that way, and I told him it hurt. I think, so under that hypothetical, the jury, if they believed Mr. Cordero's version, I think would have to come back as that was unreasonable force under the Fourth Amendment. Well, not necessarily. I guess that this is back to the concept of discriminatory force. It was not tight enough to be, you know, horrible excessive force, but it's tighter than what he uses on other people, and, you know, he pushed me to walk too fast and it was uncomfortable. It may not be. And that would, it would be dependent on exactly what the evidence was as to that. If it was described in such a way by the plaintiff that, if true, would rise to the level of being a Fourth Amendment violation. Well, I think the question is this. If it doesn't rise to the level of a Fourth Amendment violation or of an excessive force claim, but it's more harsh than what would be done to someone who was of a different race, is that a claim? I would say under certain circumstances that's possible that it could be. On the evidence in this case, it wasn't. It strikes me that it's akin to sort of a DWB, the driving while black problem. That is that you got stopped because of your race and that he might have a claim. Let me add to the hypothetical. What happens if he gets arrested, gets cuffed, and he says, these cuffs are too tight. This really hurts. And the officer says, I'll show you what's tight, and ratcheted down another couple of notches on him. And then we have the same conversations about being an Islander and so on. I think you go back under the latest facts in that hypothetical as that would be a Fourth Amendment violation. It could be. It could be. But a jury might say, in an absolute sense, that force was not so excessive. But it was clearly in addition to, you know, the reasonable force that the officer initially applied. And I think what I've tried to focus on, both when we were addressing the jury instructions at trial and now, is rather than the academic discussion of where that line would be drawn, is in this particular case, there hasn't been that specific allegation by the plaintiff that is in line with the court's questions. It was simply an open-ended, we want the jury to consider the quote-unquote actions or conduct of the officer. And the problem with that is this plaintiff was lawfully arrested and convicted of a crime. So if you gave the jury such a wildly open-ended instruction and question on the verdict form, the jury might consider, well, was the arrest lawful? And that would be improper for the jury to be doing, given that we have a criminal conviction. But no, that's a Heck versus Humphrey bar. Correct. And have you got that here in this case? Well, if the plaintiff was saying my arrest was unlawful and let's say the decision, the officers submitting reports to have me prosecuted, that there was some constitutional violation there, I believe that would have been something that should have been. But an excessive force claim might be independent of the fact of conviction. I agree with that. The excessive force claim, just because he was lawfully arrested and convicted, doesn't bar the excessive force claim. And it doesn't bar that. My concern was when the plaintiff was seeking a very open-ended equal protection instruction that just said the conduct or the actions of the officer, the jury, not knowing what they're allowed to consider, could consider things that actually are barred by Heck. And that's why, particularly at the trial court, we were focused on that. And I think the passage from the trial judge was very instructive because he was the person best suited to have heard the evidence and assessed what this trial was about, and he concluded, you have a scenario where there's no middle ground here. Well, it was awkwardly tried. I tend to wonder why there wasn't, instead, just a directed verdict on that claim instead of the refusal to instruct and so forth. I mean, it was just odd the way it was instructed. But that doesn't mean it's reversible. It's just odd. It struck me that way anyway. What do you think? I've had a hard time understanding what the trial judge thought he was submitting. Was he thought he was submitting just an excessive force claim and that he really wasn't submitting the 14th Amendment claim absent? The way that I look at these issues is, again, because I think you do have a Heck v. Humphrey bar on challenging the legality of the arrest or anything that came after, is that under these circumstances, the only way you get to the equal protection is to have step one being, was there excessive force? So I think the courts, as I understood it, the trial court's position was the jury is going to hear and is instructed on equal protection, but the first element of that coincides with the first element on the use of force. I agree with Judge Graber. It was just awkward the way he instructed on it and then kind of took it away from the jury if they didn't find excessive force. Let me ask you real quick, if there are, you arrest two people of different races and based on their race, one's handcuffed and put in a squad car and the other one's not when they put in a squad car, is that a potential 14th Amendment violation? It's legal to handcuff or not handcuff, but based on race, the officer made the decision. If there's no Hecht v. Humphrey bar, and so let's assume they're arrested, one is handcuffed, one isn't, they're both not charged with anything, I think it could be. I think it would depend on what the evidence was to support the animus. So in this case, could a jury from what they heard based on the racial statement believe that an act by the officer was motivated by his racial prejudice, even a legal act? Not, I guess it goes back to in this, under these circumstances, the only thing the officer did was the allegation of force and then anything relating to the arrest and prosecution. And we have the scenario where the jury didn't believe that the officer used force because we had these two extreme factual scenarios. If the court has any other questions, I'd be happy to address them. I don't believe we do. Thank you. Thank you very much. Mr. Hoare, you have a minute for rebuttal. Thank you, Your Honor. I would just like to point out that the trial judge did basically punt on this. I mean, there was a suggestion that he was in the best position and he was on this, but what he did was say, we're going to leave on the special verdict form. We're going to leave these questions in, even though it doesn't matter that they're there, they don't lead to anything. The question, there's questions on the 14th amendment claim. Counsel, I want to make sure I'm correct, but on the jury instructions, jury instruction number 22 is an excessive force instruction. And it has four things. It starts off with excessive force. Vyosa's use of force was a substantial factor in causing harm. Then three plaintiff is a member of a protected class and Vyosa used, you know, did intent with it based upon his membership in class seems to blend two things together. That is the, that's the 14th amendment claim. Was there a separate instruction on excessive force? Yes, I believe it's the prior one. Because that seems to blend two things and seems to, might have undermined your fourth amendment claim. If the jury thought that it also had defined as a component of that, that there was racial discrimination. Right. Well, Mr. Cordero's counsel did request those last two items that are, that are on 22. But did they, but, but not in connection with the excessive force instruction. Exactly. They did. We've blended two things here, which, which may not have helped you on either one of them. Right. But that, but that's what the request was. Those last two items. Thank you, counsel. Thank you. The case just argued is submitted and we would like to thank pro bono counsel. It's very helpful to the court when lawyers are willing to take on these cases and help us with our decision-making process. We appreciate it. The next argued case is our M versus Gilbert unified school district.
judges: Graber, Bybee, Harpool